QUINN CONST. CO. et al. v. JAMES B. CLOW & SONS.

(Circuit Court of Appeals, Sixth Circuit.    December 8, 1910.)

No. 2,047.

SALES (§ 154*)—ACTION FOR BREACH—DEFENSES.

   Pending final negotiations which it was expected would result in a contract between the United States and the lowest bidder for the construction of a naval training station, defendants made a bid to the contractor for doing the plumbing work, and also entered into a contract with plaintiff for the supplying of certain fixtures conditioned on their obtaining the subcontract, and also subject to the approval of such fixtures by the proper officer of the government, as required by the specifications, which provided that plates of the fixtures proposed to be furnished should be submitted and samples as called for. Plaintiff sent plates of its fixtures to defendant to be furnished to the general contractor and unofficially arranged with the government officer to inspect the samples at its place of business, and so notified defendants. Defendants, on obtaining their subcontract, immediately assigned it to another, and did not take the supplies from plaintiff. Held, in an action for breach of the contract, that plaintiff had done all that was required of it in the way of furnishing plates, and in regard to the inspection of samples; it being the business of the contractor to submit the plates and arrange for the inspection, and was not chargeable with any breach of its contract, which prevented its recovery.

   [Ed. Note.—For other cases, see Sales, Dec. Dig. § 154.*]

In Error to the Circuit Court of the United States for the Southern Division of the Western District of Michigan.

Action at law by James B. Clow & Sons, a corporation, against the Quinn Construction Company and the Quinn Supply Company. Judgment for plaintiff, and defendants bring error. Affirmed.

Boudeman, Adams & Weston, for plaintiffs in error.

Newton Wyeth and Henry T. Heald, for defendant in error.

Before WARRINGTON, Circuit Judge, and COCHRAN and TAYLER, District Judges.

TAYLER, District Judge. In the spring of 1907 the United States government called for bids for the construction of buildings at the naval training station, North Chicago, Ill. When the bids were opened about May 1st, it was found that the proposal of the Noel Construction Company, of Baltimore, was so much lower than those submitted by the other bidders as to justify the expectation that its proposition would be accepted. However, as the total amount of its bid was slightly in excess of $1,500,000, which was the maximum amount available for the purpose under the act of Congress, some later negotiations were entered into for the purpose of reducing the quantity of work to be done, so that, on the basis of the original bid, the work required would be done for the maximum amount available; and, resulting from that, such a contract was entered into between the government and the Noel Construction Company.

Meantime, the Noel Construction Company had been carrying on negotiations with prospective subcontractors, and these subcontractors

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

183 F.—23

with other subcontractors. The Quinn Supply Company, or the Quinn Construction Company, or both, it is immaterial at this point to determine which, had proposed to the Noel Construction Company to do the particular work covered by the government specifications which included heating, plumbing, and other related work, and the Quinn Construction Company and the Quinn Supply Company were similarly engaged in negotiations with James B. Clow & Sons for a certain portion of the plumbing. It is quite obvious that the Quinn Company could not make a final contract with the Noel Construction Company until the latter company had entered into its contract with the government, and that Clow & Sons could not enter into a contract with the Quinn Companies until after they entered into a contract with the Noel Construction Company, the chief contractor.

In contemplation, however, of these eventualities, the plaintiff below, James B. Clow & Sons, a corporation, on the 7th day of May, 1907, addressed to the Quinn Supply Company the following communication:

"Chicago, May 7, 1907.

"Quinn Supply Co., Kalamazoo, Mich.

"Dear Sir: We are pleased to quote you $62,036.63 for the following material as specified U. S. Naval Training Station, No. Chicago, Illinois.

"The quantities and descriptions are supposed to be according to plans and specifications, but we do not guarantee that they are correct, therefore you should verify the same and notify us if any discrepancies exist. We will furnish only the quantities stated for the amount named.

"If freight is allowed goods are still shipped at buyer's risk and are not insured unless so ordered. Marble and slate are figured at the 'released' freight rate and are shipped at buyer's risk unless we are authorized by buyer to ship at full rate for which there will be an extra charge.

"We are not liable for damages on account of delays occasioned by strikes, fires, accidents, or other causes beyond our control.

"Terms: Net cash.

"The above quotation is based upon our being privileged to substitute our product for goods specified as per paragraph No. 877, specification, description and plate of fixtures fully described as per attached list, paragraphs 882 to 939 inclusive, and 3208 to 3224 inclusive.

"[Then follows a list of the buildings for which the plumbing is to be supplied, with the amount to be paid for each building.]

"Soliciting your valued order, we are

"Yours truly,            James B. Clow & Sons,
                                  "[Signed]   S. McKeeby."

On this letter the following indorsement appears:

"We hereby accept this proposal subject to the approval of the fixtures by the proper officer of the U. S. government. The proposal and our acceptance to constitute a contract which is to go into force and become valid only on the date of our signing of our contract for the equipment with the Noel Construction Company.               Quinn Construction Co.,
           "By S. A. Quinn, for the Quinn Supply Company."

The amounts set out in the proposal were afterwards changed in consequence of the reduction of the entire price of the maximum amount allowed by the act of Congress. This circumstance has no bearing on the controversy between the parties.

The paragraphs of the specifications referred to in the Clow letter which have a bearing on the questions before us are Nos. 877 and 878, which are as follows:

"877. The plate numbers referred to are given only to indicate the character and quality desired. It is not the intention to restrict competition as to the maker, and any other makes of plumbing fixtures which are in all respects equal or superior to those indicated will be acceptable. Bidders, however, who desire to submit fixtures other than those specified must submit full specification, description, and plates of fixtures for approval by the officer in charge. Samples shall be submitted as required.

"878. Where dimensions and weights are given, it is intended that a reasonable variation from sizes and weights specified may be allowed in order to suit sizes and weights of various manufacturers. This variation in sizes and weights is not to be more than 5 per cent, but the design, operation, construction and quality are to be equal in every respect."

October 14th the Quinn Construction Company entered into a contract with the Noel Construction Company whereby it agreed for the consideration of $226,000, subject to certain relatively unimportant reductions, to supply the materials and install the plumbing and other fixtures in certain named buildings of the naval training station. This contract covered the work and materials included in the proposal of Clow & Sons. The parties proceeded after the 1st of July on the assumption that a contract had been entered into between the Quinn Construction Company and the Noel Construction Company, and vague and indefinite reference to such an earlier contract is made in the testimony of one of the witnesses for the Quinn Company. Clow & Sons do not seem to have known until long afterwards that the final contract on which the plumbing was to be installed was not actually entered into until October 14th. When this last contract was entered into, Clow & Sons' proposed materials had not been approved or even considered by the government, nor had samples, photographs, or specifications of the fixtures which Clow & Sons proposed to furnish been submitted to the government. October 16th the Quinn Construction Company, which two days before had entered into its contract with the Noel Construction Company, assigned the contract to Edward J. McDonough and Byron E. Van Auken, thus putting it out of the power of the Quinn Company to carry out its contract with Clow & Sons.

So far as the testimony discloses, Clow & Sons did not learn of the assignment to McDonough and Van Auken until some time in December, and shortly thereafter this suit was brought, seeking to recover damages for breach of the contract of May 7th. A trial was had and a verdict rendered in favor of Clow & Sons for $6,311.71. From the judgment of the court entered on the verdict these error proceedings are prosecuted.

A preliminary question arises which will be disposed of before taking up the main issue in the case. The suit is brought against the Quinn Construction Company and the Quinn Supply Company, two corporations having their place of business at Kalamazoo, and both under the management of Sylvester A. Quinn. It is contended that the Quinn Supply Company was not a party to the contract, and that Clow & Sons after the contract was entered into dealt with the situation on that theory.

It will be observed that the contract is signed "Quinn Construction Company, by S. A. Quinn for the Quinn Supply Company." This

signature implies that the Quinn Supply Company assumed authority to sign for the Quinn Construction Company. The court, by a proper instruction, ·submitted the question to the jury as to what was the purpose of the parties at the time the contract was entered into, and as to whether or not their minds met on the proposition that both companies were obligated by the contract. The jury by its verdict found against the contention of Quinn Supply Company and returned a verdict against both of them. We see no ground for denying the soundness of this conclusion, and as between Clow & Sons, on the one hand, and Quinn Construction Company and Quinn Supply Company, on the other, the question is of little practical importance, since a bond in the sum of $10,000 has been given by each of the defendants, and thus the payment of the judgment, if affirmed by this court against either defendant, has been assured.

Coming now to the main question in the case. Counsel for plaintiffs in error insist that Clow & Sons failed and refused to submit to the government samples and specifications of the fixtures which they proposed to furnish. It was in the contemplation of the parties as manifested by the contract that Clow & Sons were to have the privilege, if the government would consent, to substitute for the particular articles specified appliances of their own manufacture. But, in any event, they were bound to furnish fixtures which would meet the government requirements. Clow & Sons claimed on the trial that they were ready to furnish whatever the government required, but were sure that, as their own appliances came within the general terms of the specifications, they would be accepted by the government, and this seems to be the effect of paragraph No. 877 of the specifications; for, where reference was made in other parts of the specifications to fixtures of certain manufacture, these were only referred to to indicate the character and quality desired. Paragraph 877 provides also that:

"Bidders who desire to submit fixtures other than those specified must submit full specification, description, and plates of fixtures for approval by the officer in charge. Samples shall be submitted as required."

Some correspondence occurred in July and August between Clow & Sons and Quinn Construction Company respecting the submission by. Clow & Sons of samples of plumbing fixtures, and plaintiffs in error insist that it became the duty of Clow & Sons to submit the same to the government officers. What Clow & Sons did do was to turn over to Quinn Construction Company a full line of photographic representations, with specifications, of the fixtures proposed to be furnished, some 40 or 50 in number, entitled "United States' Naval Training Station, North Chicago. Selections from J. B. Clow & Sons." It would seem to be self-evident that no direct relation existed between Clow & Sons and the Noel Construction Company or the United States government. The parties with whom they contracted were the Quinn Companies, and the turning over to the Quinn Construction Company by Clow & Sons of the plates and specifications to which reference has just been made would seem to be a performance, as between the parties to this litigation, of all the duty which up to that time the Clow Company owed to the Quinn Company.

Specification No. 877 provides, as before indicated, that:

"Bidders who desire to submit fixtures other than those specified must submit full specification, description, and plates of fixtures for approval by the officer in charge.  Samples shall be submitted as required."

Two pertinent observations are to be made with respect to this provision of the specifications.  The word "bidders" does not mean subcontractors.  The government dealt primarily only with bidders for the whole contract and, after the contract was made with the Noel Construction Company, it remained the only bidder with whom the government had direct relations.  The submission, therefore, required by paragraph 877 would be a submission by the Noel Construction Company, who, of course, would look to their subcontractor, the Quinn Construction Company, for submission to it, and the Clow Company would be required to submit its specifications, descriptions, and plates to its contracting party, the Quinn Companies.  The other observation to be made with respect to this paragraph 877 is that samples were not to be submitted except as required, and there is no proof that Clow & Sons were ever called upon to submit to the Quinn Company or to the government any samples of fixtures which they proposed to furnish, except as shown by the following correspondence.

On September 25, 1907, the Quinn Construction Company addressed the following letter to Clow & Sons:

"Kalamazoo, Mich., Sept. 25, 1907.

"James B. Clow & Sons, No. 342 Franklin St., Chicago, Ill.

"Dear Sirs: We understand that the government proposes to select the plumbing fixtures to be installed in the buildings at the new Naval Training Station at Lake Bluff not later than October 15, next, and presume that you are advised in the matter and will submit your samples.

"Yours Very Truly,          Quinn Construction Company,
                                          "By W. A. Quinn."

On September 28th Clow & Sons sent the Quinn Construction Company the following reply:

"Chicago, Sept. 28–07.

"The Quinn Construction Co., Kalamazoo, Mich.

"Gentlemen: In answer to yours of the 25th inst., you are respectfully informed that samples are ready for inspection.  Unofficially we are informed by the commandant of the Naval Training Station that he would not be averse to make an inspection at our sample room, therefore we ask that you notify the Noel Construction Co. of such readiness on our part to comply with the requirements of the government affecting the order that you placed with us for the plumbing fixtures to be used in the buildings to be constructed at the U. S. Naval Training Station, No. Chicago.

"We request that we be given at least two days notice prior to the inspection.

"Yours truly,          James B. Clow & Sons,
                              "S. McKeeby,
                         "Mgr. Specialty Dept."

This was the last of the correspondence on this subject between Clow & Sons and the Quinn Construction Company, and the letter of Clow & Sons was manifestly in accord with the proprieties, not to say the necessities, of the situation.  The information from the commandant of the Naval Training Station was, as it must have been, unofficial, because the commandant could have no official relations with the Quinn Company's subcontractor.

It was entirely proper that the inspection should be made at a sample room near by, in the city of Chicago. Every requirement of convenient and efficient inspection could be better there complied with than at the training station, which had not far advanced in the work of construction.

It was a very proper request to make that the Quinn Company should notify the party with whom it contracted, to wit, the Noel Construction Company, which was the main contractor, and therefore in immediate relations with the government, that Clow & Sons were ready to comply with the requirements of the government affecting the supply of plumbing fixtures to be used in the Naval Training Station buildings, and it was obviously proper that they should ask that two days' notice should be given prior to the inspection. This particular correspondence, the last correspondence between the parties, regardless of what had gone before, was entirely sufficient to make compliance both with the request of Quinn Construction Company in their letter of September 25th and with the general propriety and requirements of the situation. Instead of complying with these reasonable and sufficient requests, the Quinn Company took no further steps to assist in having an inspection made of the Clow & Sons' fixtures, but disposed of their contract and washed their hands of the whole business.

So the question arose: Did Clow & Sons fail to perform their duty in respect to the matter of submission of full specification, description, and plates of fixtures other than those specified, and did they refuse to submit samples as required? The trial judge fully and correctly charged the jury on this point. He told the jury that, if the failure to secure the government's approval of the fixtures which Clow & Sons proposed to furnish was due to Clow & Sons' fault, then their verdict must be for the defendants, and if, on the contrary, such failure was not due to the fault of plaintiff, Clow & Sons, then there was a breach. We do not find that the court either misconceived the question at issue or failed to properly define what would constitute a breach of the contract and under what circumstances, if at all, the Quinn Companies would be liable; so that, considering the case solely on the assumption that a contract had long prior to October 14th been entered into between the Noel Construction Company and Quinn Construction Company, we think that Clow & Sons did all that under the contract they were required to do in respect to the submission for approval of fixtures which they proposed to substitute for those described in the specifications.

But, in addition to this, it appears that the only contract between the Noel Company and Quinn Construction Company which was offered in evidence was entered into October 14th and two days thereafter, as already stated, Quinn Construction Company, by assigning the contract to McDonough and Van Auken, put it out of their power to carry out its contract with Clow & Sons. It is not unlikely that there was a previous understanding between the Noel Company and the Quinn Company that the latter was to secure the plumbing and heating contract, but if we assume, as we probably would be required

to do, if necessary to a determination of the case, that the only contract between them which we have a right to consider was that executed October 14th, then it is so manifest as to need no argument to support it that Clow & Sons could do nothing in the way of submitting descriptions or samples of fixtures until after that date. If that be true, the conclusion that the Quinn Company was guilty of a breach is obvious. But, apart from that, we are of the opinion that the trial judge properly instructed the jury on all of the points involving any controversy and that there was no error in the proceedings or in the judgment of which the Quinn Companies can properly complain.

The judgment of the lower court is therefore affirmed, with costs.

NOTE.—The decision in this case was announced by the court after the death of Judge Tayler.